IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-00931-CNS-MDB

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

     Plaintiff,

v.

AM INC. d/b/a WING IT PLUS AT THE
CHAPEL HILLS MALL,

     Defendant.

_____

**PLAINTIFF'S MOTION FOR DEFAULT FINAL
JUDGMENT AND MEMORANDUM IN SUPPORT**

     Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.

("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby

moves for entry of a Default Final Judgment against defendant AM Inc., d/b/a Wing It Plus at the

Chapel Hills Mall ("Defendant"), and states as follows:

**PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT**

     1.     On April 14, 2023, Plaintiff filed its Complaint in this action.  The Complaint

contains a single cause of action for copyright infringement against Defendant. See D.E. 1.

     2.     On May 6, 2023, Defendant was served with a copy of the Summons and Complaint

in this action. See D.E. 13.

     3.     On June 5, 2023 (following expiration of Defendant's response deadline), Plaintiff

filed its Motion for Clerk's Default [D.E. 15].

     4.     On June 8, 2023, the Clerk entered a Clerk's Default against Defendant.

<u>**FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT**</u>[1]

**I.     Plaintiff's Business and History**[2]

5.     Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

6.     Plaintiff operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

7.     Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

8.     Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

9.     Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used).  Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

---

[1]     "A defaulting defendant "'admits the plaintiff's well-pleaded allegations of fact.'" <u>Poulin Ventures, LLC v. MoneyBunny Co.</u>, No. 1:19-cv-01031-JCH-GBW, 2022 U.S. Dist. LEXIS 20114, at *10 (D.N.M. Feb. 3, 2022) (quoting <u>Olcott v. Delaware Flood Co.</u>, 327 F.3d 1115, 1125 (10th Cir. 2003)).

[2]     The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the August 4, 2023 Declaration of Rebecca Jones (the "<u>Jones Decl.</u>"), a true and correct copy of which is attached hereto as Exhibit "A," and the August 4, 2023 Declaration of Daniel DeSouza (the "<u>DeSouza Decl.</u>"), a true and correct copy of which is attached hereto as Exhibit "B."

10.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

11.     In 2001, a professional photographer created a photograph titled "ChickenWingHot007" (the "Work").  A copy of the Work is exhibited below:



12.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on September 29, 2016 and was assigned Registration No. VA 2-019-412.

13.      A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

## III.   Defendant's Unlawful Activities

14.     Defendant is a restaurant business that serves wings and burgers located at the Chapel Hills Mall in Colorado Springs, CO.

15.     Defendant advertises/markets its business primarily through its commercial websites                          (https://wing-it-plus-at-the-chapel-hills-mall.business.site/, https://www.wingitplus.com/?v=402f03a963ba), and other forms of advertising.

16.     On a date after Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its website in connection with the promotion of wings (at https://wing-it-plus-at-the-chapel-hills-mall.business.site/):



17.     A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, is attached to the Complaint as Exhibit B thereto.

18.     Defendant is not and has never been licensed to use or display the Work.  Defendant never contacted Plaintiff to seek permission to use the Work in connection with its business or for any other purpose.

19.     Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.

20.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc.  To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

21.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

22.     Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

23.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered the Defendant's unauthorized use/display of the Work on April 16, 2020.

24.     Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such

unauthorized use. To date, Plaintiff has been unable to negotiate a reasonable license for the past/existing infringement of its Work.

**ARGUMENT**

## I.   Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). The entry of a default judgment means that the "defendant admits to [the] complaint's well-pleaded facts and forfeits his or her ability to contest those facts." Tripodi v. Welch, 810 F.3d 761, 764 (10th Cir. 2016). In other words, the entry of a default judgment relieves the plaintiff "from having to prove the complaint's factual allegations." Id. at 765.

"Once default is entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Avus Designs, Inc. v. Grezxx, LLC, No. 22-CV-0173-SWS, 2022 U.S. Dist. LEXIS 218066, at *3 (D. Wyo. Dec. 2, 2022) ("Default judgment cannot be entered until the amount of damages has been ascertained."). An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); All. Laundry Sys. LLC v. Cowboy Laundry of Okla. Inc., No. CIV-20-136-PRW, 2020 U.S. Dist. LEXIS

195093, at *6 (W.D. Okla. June 23, 2020) ("A default judgment can be entered without a hearing if the amount of damages can be ascertained. That is, sworn affidavits and supporting documentation may support an award of damages and a formal evidentiary hearing is not required.").

## II.     Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement requires that the plaintiff prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Craft Smith, Ltd. Liab. Co. v. EC Design, Ltd. Liab. Co., 969 F.3d 1092, 1099 (10th Cir. 2020).

### 1.     Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication. The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See, e.g., Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to find invalidity of the

registration because the registration was made over five years after the Jesse Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot find, as a matter of law, that the certificate of registration is invalid."); <u>Lifetime Homes, Inc. v. Residential Dev. Corp.</u>, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans.").  As succinctly explained in <u>Southall v. Force Partners, LLC</u>, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not ***forbid***[3] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. <u>Yurman Design, Inc. v. Golden Treasure Imps., Inc.</u>, 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright<u>); Telerate Sys., Inc. v. Caro</u>, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[4] The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of

---

[3]  Emphasis in original.

[4]  Emphasis added.

Copyrights as set forth above. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

**2.      Defendant Copied the Work**

"The copying prong  has two components. First, there  must  be copying as  a  factual matter—that is, the defendant must actually appropriate the plaintiff's work. Second, there must be substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected by the Copyright Act." Dutcher v. Bold Films LP, 822 F. App'x 858, 861 (10th Cir. 2020). Here, the screenshots of Defendant's Facebook page unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

**III.    Defendant's Infringement was Willful**

The United States Court of Appeals for the Tenth Circuit "agree[s] with the majority view among the other circuits: the prima facie case for willful infringement requires a showing of specific intent to violate copyright law." BC Tech., Inc. v. Ensil Int'l Corp., 464 F. App'x 689, 696 (10th Cir. 2012); Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458, 464 (E.D.Pa.1987)) (willful infringement occurs when a defendant acts "with 'actual knowledge  or reckless disregard  for   whether   its   conduct   infringed   upon   the plaintiff's copyright.'"); Id. at 1313 (citations omitted) ("Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default."). "Willful

infringement 'is rarely provable by direct evidence, and most often can be proven only by inference from the evidence introduced.'" Id. at 696 (citing United States v. Sherman, 576 F.2d 292, 297 (10th Cir. 1978)). "And 'where specific intent is an element of a crime it must be proven as an independent fact or clearly inferred from the evidence.'" Id. (citing United States v. Sherman at 297). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendant of its infringement pre-lawsuit (which included e-mails, Federal Express, and telephone calls). Defendant's refusal to pay a reasonable licensing fee and refusal to substantively communicate demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of  the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was   willful and deliberate. CrossFit, Inc. v. Jenkins, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014) (citing Jackson v. FIE Corp., 302 F.3d 515, 525 (5th Cir. 2002)); (citing Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987)).

## IV.   Plaintiff's Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." Lorentz v. Sunshine Health

<u>Prods.</u>, No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010);

<u>Guarneros v. Denver Green Party</u>, Civil Action No. 1:19-cv-00139-RM-NYW, 2020 U.S. Dist.

LEXIS 225558, at *10 (D. Colo. Dec. 2, 2020) ("One way to measure actual damages in situations

where the infringer could have bargained with the copyright owner to purchase the right to use the

work is to assess "what a willing buy would have been reasonably required to pay to a willing

seller for plaintiff['s] work.") (quoting <u>Jarvis v. K2 Inc.</u>, 486 F.3d 526, 533 (9th Cir. 2007)).

> 'Actual Damages' means the amount of money adequate to compensate Plaintiff for the reduction of the fair market value of the copyrighted work caused by Defendant's infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendant of Plaintiff's work. That amount may be represented by the lost license fees Plaintiff would have received for Defendant's unauthorized use of Plaintiff's work.

<u>Live Face On Web, LLC v. Integrity Sols. Grp., Inc.</u>, 421 F. Supp. 3d 1051, 1071–72 (D. Colo.

2019).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff

exclusively operates on a subscription basis whereby it provides access to its library at $999.00

per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at

least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year).

Plaintiff generally does not license individual photographs as doing so greatly diminishes the value

of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows

exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers

that a competitor down the street will not be using the same photograph(s) in its own weekly ads,

circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of

thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their

products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library.  Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date).  Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography.  All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal.  For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use

together with a website URL (if available) where the infringement is located. A true and correct copy of Plaintiff's infringement notices with respect to the Work at issue in this lawsuit are attached to the Jones Decl.

The screenshot of Defendant's website in conjunction with Plaintiff's infringement notice shows that the Work was published by Defendant at least as of April 16, 2020 (the date on the infringement notice). However, Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and/or removed from Defendant's website. However, because the Work was published as of April 16, 2020, a minimum 1-year license for the Work would apply. Defendant would therefore be owed an annual license fee of (at minimum) $11,988.00. Given these facts, Plaintiff proffers that the cost of 1x annual license payment ($11,988.00) is the most accurate measure of Plaintiff's actual damages based on presently known facts.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS

205649, at *10 (S.D. Fla. Mar. 22, 2022). The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts. See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for  3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-cv-07953-ER, 2023 U.S. Dist. LEXIS 68835, at *25 (S.D.N.Y. Apr. 14, 2023) (awarding $47,952.00 in statutory damages, representing the $11,988.00 annual license fee for 2-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407, at *2 (D. Colo. May 19, 2023) (awarding $35,964.00 in actual damages, representing the $11,988.00 annual

license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993, at *19 (N.D.N.Y. June 28, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171, at *20 (N.D.N.Y. June 27, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elected to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

**A.    *Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement***

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement.  Where (as here) willful infringement has occurred, courts will generally look to a plaintiff's actual damages and award 3x – 5x to properly account for statutory damages.  See, e.g. Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after applying a scarcity multiplier); Joe Hand Promotions, Inc. v. Alburl, No. 5:18-cv-1935-LCB, 2020 U.S. Dist. LEXIS 29309, at *16-17 (N.D. Ala. Feb. 20, 2020) ("Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees.  As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent."); Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. George Moore Enters., Inc., 184 F. Supp. 3d 166, 171-72 (W.D. Pa. Apr. 25, 2016)

("Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions."); Harner v. Wong Corp., No. 1:12-cv-00820-KG-ACT, 2013 U.S. Dist. LEXIS 198954, at *44 (D.N.M. Oct. 31, 2013) ("Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement.") (quoting Wilson v. Brennan, 666 F. Supp. 2d 1242, 1264-65 (D. N.M. 2009), aff'd, 390 F. App'x 780 (10th Cir. 2010)).

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Commc'n Corp., 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather information. Plaintiff's licensing structure is a strong proxy for calculating damages. Given the

circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$23,976.00*** ($11,988.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law. Plaintiff requests the Court to apply the same multiplier Judge Middlebrooks applied in <u>Patriot Fine Foods</u>, wherein his honor doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's actual damages, it is well within the Court's discretion to award substantial damages to the Plaintiff upon a finding of willfulness. For example, in <u>Corson v Brown Harris Stevens of the Hamptons, LLC</u>, the court found that willfulness entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C. § 504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual damages):

> So first the main issue was whether defendant's infringement was willful. I find here willfulness entitles plaintiff to the enhanced statutory damages provided by 17 U.S.C. Section 504(c)(2). The standard for willful infringement is not only knowledge on the defendant's part that what it did was infringement but also reckless disregard of the practice of protecting creativity, the very purpose of copyright. When the plaintiff can demonstrate, either directly or through circumstantial evidence, that defendant had knowledge that its actions constituted infringement, or recklessly disregarded that possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. Section 504(c)(2) are appropriate.
>
> Plaintiff successfully proved that her photograph was copyright protected. It's clear that defendant, as a sophisticated business, knew there was copyright involved and did nothing to check those rights or to clear permission to reprint from the photographer.
>
> I find that the infringement was willful, and I find that the conduct of indifference to the rights of others was egregious and that the statutory damages should be $25,000. There were no actual

damages.

<u>Corson v Brown Harris Stevens of the Hamptons, LLC</u>, Case No. 1:16-cv-00545-AKH. <u>Corson</u> was a fully litigated case in which, though the Judge found that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long experience not merely compels restitution of profit and reparation from injury but also a desire to discourage wrongful conduct." <u>Corson</u> (referencing <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 233 (1952)).

### A.   *Full Costs and Reasonable Attorneys' Fees are Appropriate*

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate. Accordingly, Plaintiff requests the Court to award costs and attorney's fees in the amount of $3,845.75 consisting of costs in the amount of $717.00 and fees in the amount of $3,128.75. The amount and reasonableness of the costs and fees are established by the Declaration of Daniel DeSouza, submitted concurrently herewith.

### II.   Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue

injunctions as part of default judgements. <u>Arista Records</u>, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action.  Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff $23,976.00 for Defendant's infringement of the Work, award Plaintiff its costs and attorneys' fees as set forth in the DeSouza Decl., award Plaintiff prejudgment interest, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper.  A proposed order is filed herewith.


Dated: August 4, 2023.                    COPYCAT LEGAL PLLC
                                          3111 N. University Drive
                                          Suite 301
                                          Coral Springs, FL 33065
                                          Telephone: (877) 437-6228
                                          dan@copycatlegal.com


                                          By: /s/ Daniel DeSouza_____
                                                Daniel DeSouza, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2023, I electronically filed the foregoing document, in addition to all the documents required by the local rules, with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on August 4, 2023, the foregoing document, in addition to all the documents required by the local rules, was served via US Mail on AM Inc., d/b/a Wing It Plus at the Chapel Hills Mall, 1710 Briargate Blvd., Suite 452, Colorado Springs, CO 80920.


                                          /s/ Daniel DeSouza___
                                          Daniel DeSouza, Esq.