**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-00931-CNS-MDB

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

AM INC. d/b/a WING IT PLUS AT THE
CHAPEL HILLS MALL,

    Defendant.

## DECLARATION OF REBECCA JONES

Rebecca Jones does hereby declare pursuant to 28 U.S.C. § 1746:

1. I am over the age of 18 and otherwise competent to testify. I make the following statements based on personal knowledge.

2. I am the Secretary of plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff").

3. Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

4. Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of, at minimum, $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

5. Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios

whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

6. Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

7. Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end suers' for which Plaintiff's photographs are to be used). Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

8. Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

9. Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll, etc.) to protect the integrity of its library.

10. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by

Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

11. Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date).

12. Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the sixteen at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff has additional costs associated with post-processing the image using specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print or digital media advertising.

13. When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a Website URL (if available) where the infringement is located. A true

and correct copy of such infringement notices with respect to the work at issue in this lawsuit are attached hereto as Exhibit "1."

14. In 2001, a professional photographer created a photograph titled "ChickenWingHot007" (the "Work"). A copy of the Work is exhibited below:



15. The Work is owned by Plaintiff, is available for license on the above-stated terms, and was created through the same or substantially similar creative process as described above.

16. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on September 29, 2016 and was assigned Registration No. VA 2-019-412. A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A

thereto.

17. I am not aware of any privately owned library of photography matching the extensiveness and quality of Plaintiff's library, especially when considering the overall theme/vision of creating photographs attractive to the average consumer to encourage such consumer to actually buy the product at issue (rather than an overly-complex image that leads the average consumer to believe that he/she could never create such a meal).

18. Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered defendant AM Inc., d/b/a Wing It Plus at the Chapel Hills Mall's ("Defendant") unauthorized use/display of the Work on April 16, 2020.

19. Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc.  To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

20. Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work prior to April 16, 2020.

21. Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one infringement notice to Defendant to notify it of the impermissible use.  Defendant ignored the infringement notice and did not otherwise respond to Plaintiff.

22. Ultimately, Plaintiff was forced to retain counsel to pursue this matter (who itself

sent a demand letter/infringement notice via e-mail and FedEx to Defendant). It is my understanding that Defendant did not meaningfully respond to Plaintiff's counsel.

23. The ability of Defendant to reproduce, modify, distribute and display Plaintiff's photography for Defendant's own commercial benefit without compensation to Plaintiff greatly impairs the market value of the photographs since others competing with that business, or in related business areas, will not want to obtain a license to Plaintiff's work if they are already associated with a competing business. Similarly, potential licensees of Plaintiff's copyrighted photographs will not want to pay Plaintiff's annual license fees for the entirety of Plaintiff's library if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

24. The Work at issue in this lawsuit has lost significant value by the continuing dissemination resulting from Defendant's infringement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: 8/4/2023, 2023.

*Rebecca M. Jones*
ID fHW3jbETDtcj4KaudaQjwyy4
_____
Rebecca Jones

## eSignature Details

**Signer ID:**  **fHW3jbETDtcj4KaudaQjwyy4**
Signed by:  Prepared Food Photos, Inc.
Sent to email:  doug@preparedfoodphotos.com
IP Address:  70.169.183.74
Signed at:  Aug 4 2023, 3:35 pm EDT

**EXHIBIT "1"**



Adlife Marketing & Communications Co., Inc.
38 Church St • Pawtucket, RI 02860
Phone: (401) 723-4782

**Re: Claim Number: 4628762314917985777**
**FRE 408 SETTLEMENT COMMUNICATION**

Thursday, April 16, 2020

## Company Name
Wing It Plus

## Company Address
1710 Briargate Blvd, Suite 452
Colorado Springs, CO 80920

## Company Phone Number
(719) 598-8183

## URL Containing Image
https://wing-it-plus-at-the-chapel-hills-mall.business.site/



**Image Name**
ChickenWingHot007

**Registration Number**
VA0002019412

